LUTHER BEECHER v. GEORGE M. PETTEE.

*Contract—Part performance—Special declaration.*

A hotel manager brought suit against the proprietor for preventing the performance of the contract of management by his interference. *Held* that a letter from the proprietor to a newspaper, avowing the discharge of the table waiters, was relevant evidence.

A cause of action under a special contract cannot be so divided that recovery can be had partly on a general count and partly on a special.

Where one sues for not being suffered to complete a special contract, he must declare specially and cannot rely on the common counts.

One cannot recover under a special count upon a promise which it does not count on.

Error to the Superior Court of Detroit. Submitted January 8. Decided January 21.

ASSUMPSIT upon common and special counts. Defendant brings error. The facts are in the opinion.

*F. A. Baker* and *E. F. Conely* for plaintiff in error.

*Crofoot & Kudner* for defendant in error.

COOLEY, J. Beecher, who is proprietor of the Biddle House in the city of Detroit, on the second day of October, 1875, entered into an agreement with Pettee for the taking charge of and furnishing the kitchen and dining room of that house from that time until the thirty-first day of March following. The contract is given in the margin.* Pettee claims that Beecher, before the month

---

* *Luther Beecher*—Myself and wife agree to assume the responsibility and running of the dining-room and kitchen of the Biddle House on the first day of October, 1875, and giving our individual attention to each branch connected with it, will serve a table which shall be in every respect first-class and shall give general satisfaction to yourself and the guests of the house. We to pay all costs of supplies, servants, heat, gas, water, ice, and all other expenses, daily or weekly, for this department, for which you are to furnish the use

of October was completed, interfered so seriously with his management by the discharge of servants, etc., and affected the business so much by raising the price of board, that it became impossible for him to continue under the contract except at a serious loss, and that this fact became the basis of new negotiations between the parties at the end of that month. The result of these negotiations Pettee says was that Beecher agreed to give Pettee three hundred dollars for his services in October, that sum being about one-half the profits which Beecher as proprietor of the house had made for that month, and to pay Pettee two hundred and fifty dollars a month for the services of himself and his wife for the next six months, with rooms and board for himself and his family; and Pettee accepted these terms and proceeded in performance on his part, until the 17th day of December following, when Beecher closed the house and terminated

---

of dining-room, kitchen, and laundry, store-rooms, closets, furniture and equipments, and comfortably furnished living rooms for our family use; also furnished rooms for sufficient servants to carry on that part of the house, and pay us six dollars per week for each weekly table boarder of the house, and thirty (30) cents per meal for each transient person, and a corresponding percentage for meals served on the European plan, payable weekly.

Nurses and children shall be boarded at their own table for three dollars per week, and meals served in rooms shall be on the European plan.

The furniture and equipments shall be invoiced October 1st, 1875, and at the close of this agreement on the 31st of March, 1876, and is to be kept at our expense in as good condition and of equal value as when invoiced to us.

The supplies now on hand to be invoiced to us *at cost* and paid for from first money due us. It is expressly agreed by us that a strict account of all outlay shall be kept and monthly statement thereof made to you, and whenever the monthly gains or profits shall exceed $250 per month, or the average of $1,500 for the six months, that all excess over this amount shall belong to you as rental for use of dining-room, kitchen, etc., etc.

It is further agreed that in case of our neglect or inability or from any cause we fail to perform our part of this agreement, you may provide for such default and terminate the same and take immediate possession and invoice supplies, equipments, etc., settlement and payment shall be made on the above terms, to the time of such failure only.

G. M. PETTEE.

I accept above proposition.

LUTHER BEECHER.

At the commencement of the foregoing appeared the following: "Signed in duplicate, Oct. 2d, 1875."

his employment.    Meantime he had not had rooms and board for himself and his family according to the agreement.

Pettee then brought suit.    The first count in the declaration is upon the written contract, the breach alleged being that Beecher refused to permit Pettee to carry out and perform it.    The second count was on the alleged agreement to employ Pettee and his wife for the six months following November 1, 1875, and to furnish them with rooms and board.    Nothing is said in this count about the payment of three hundred dollars for services in October.    The common counts were also added.

On the trial Pettee was allowed to prove some of the negotiations which led to the written contract as bearing upon its proper construction.    We have been unable to discover either any reason for this, or, on the other hand, how it could possibly injure the defendant.    It would have been much better to have saved questions by omitting to offer it.

Plaintiff was allowed to put in considerable evidence to show that defendant by his interference broke up the arrangement effected by the written contract.    Some of this had but slight tendency in that direction, but we cannot say that any of it was clearly irrelevant.    A letter written by Beecher to one of the Detroit papers, in which he avowed the act of discharging the table waiters, the reception of which was objected to, was admissible, we think, beyond question.*

---

* The letter as given in the record was as follows:

BIDDLE HOUSE, Oct. 22nd, 1875.

*Mr. Free Press:*

Generally your "items man" is sometimes O. K., but not always so, leastwise some facts in place of "sudden fancies" in giving correct views of current events at the "Biddle House dining-rooms" would cost you nothing and benefit me much.

"Colored waiters."  Yes I have seen much of them.  More than ½ of that imported set of French crockery is now a smash-up, then silver spoons and knives and forks imported for the B. H. are out on pawn duty for "drinks that cheer and exhilarate."  Also the new and expensive cut glassware has become broken glass under *their* careful usage.  Loaf sugar, cream cakes, and grapes of the sun disappear most strangely between the pantry and guests' table.  Storms

The real controversy in the case was over the question whether a new contract was actually made between the parties as Pettee claimed. The jury have found, on somewhat slight evidence, that there was. We discover no error in any of the rulings of the court with a single exception, and that relates to the three hundred dollars which Pettee claims was to be paid him for services in October. This the court held he might recover if the arrangement was made as he testified.

In respect to the promise to pay this sum, it is to be said that, standing alone, it would be *nudum pactum*. It is not pretended that Pettee was entitled to it under the first contract, nor that Beecher agreed to pay it in settlement of claims under that contract. There was consequently no consideration for the promise, unless it was a part of the new arrangement by which Pettee and his wife were to give their services for six months for two hundred and fifty dollars a month, and to receive the three hundred dollars in addition.

The count in the declaration on this new promise does not, however, include this promise as any part of it. The sum could not therefore be recovered under that count. Neither could it be recovered under the common counts, for the new contract was never fulfilled, and plaintiff seeks to recover for not being suffered to fulfill it. But he cannot divide up his cause of action under the special contract and recover for a part under the general count and a part under the special. When he sues for not being suffered to complete a special con-

---

of noises and confusion—with streaks of blue swearing and pure cussedness—gives daily high-toned style to the boarders' tables unless "small scrip" passes current, &c., &c. Coats, vests, pants and seedy old shoes of these young people mixed up promiscuously in the china cupboards added sweet smells, twice as green from the sources of the upper river mills. * * The past 4 years has cost in cash, for this kind of thing has been in wages, paid to them direct, over $30,000, and as much more in value has been lost, mislaid and stolen. * * * *I said go,* and they *went,* I hope to trouble me no more.

Yours truly,
UNCLE LUTHER BEECHER.

tract, he must declare specially, and cannot rely upon the common counts as being applicable to any portion of his grievance. If the consideration for the promise to pay the three hundred dollars was the promise of plaintiff to perform certain labor in the future the plaintiff ought to have framed his special count to accord with the facts; but this he did not do. It is proper to say, however, that we find in the record no evidence clearly tending to establish that theory of the facts.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.